IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

RHONDA D. LOTT                                                              PLAINTIFF

v.                                              CIVIL ACTION NO. 2:14-CV-131-KS-MTP

FORREST COUNTY, MISSISSIPPI
(same entity as Sheriff of Forrest County,
Mississippi in his official capacity);
CHIEF DEPUTY CHARLES BOLTON,
in his individual capacity; and
SERGEANT ANDREA ESTRADA
in her individual capacity                                               DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matters is before the Court on Defendants Chief Deputy Charles Bolton ("Bolton")

and Sergeant Andrea Estrada's ("Estrada") Motion for Summary Judgment [54] and Defendant

Forrest County, Mississippi's (same entity as Sheriff of Forrest County, Mississippi, in his

official capacity) (the "County") Motion for Summary Judgment [56].  After reviewing the

submissions of the parties, the record, and the applicable law, the Court finds that Bolton and

Estrada's Motion for Summary Judgment [54] should be denied, and that the County's Motion

for Summary Judgment [56] should be granted in part and denied in part.

## I.  BACKGROUND

On August 19, 2014, Plaintiff Rhonda D. Lott ("Lott") brought this action against the

County, Bolton, and Estrada (collectively "Defendants").  Lott claims Defendants retaliated

against her in response to testimony she gave in the Ware-DuPree election contest trial.

Lott began working as a corrections officer with the Forrest County Sheriff's Department

in August 2012, and was assigned to work in booking.  (Lott Depo. [67-1] at p. 37.)  She testified

in the Ware-DuPree trial on July 29, 2013.  (*See* Trial Transcript [67-8] at p. 1.)  In her testimony,

she stated that she had overheard a phone conversation between Bolton and Estrada in which they discussed making Samuel Lindsey "pay" for his testimony in the Ware-DuPree trial.  (*Id.* at p. 5.)  Immediately after her testimony, Lott claims she was treated differently at work by Bolton and Estrada.  (Lott Depo. [67-1] at p. 64, 85-87; *see also* Cooley Depo. [69-10] at p. 24.)  Some of this treatment, she claims, was racially charged.

After her complaints about her treatment went ignored by the ordinary chain-of-command, Lott filed her first complaint with the Equal Employment Opportunity Commission ("EEOC") on October 23, 2013.  (Lott Depo. [67-1] at pp. 85-87.)  After Estrada's conduct continued, Lott was transferred to Female 101, where her duties consisted of "sit[ting] on a tower . . . watch[ing] cameras, mak[ing] sure there's no activity, do[ing] head counts, feed[ing], tak[ing] to the nurse's station, [and] things of that nature."  (*Id.* at 90-91.)  This transfer was done to "keep the peace" according to Captain Donnell Brannon ("Captain Brannon"), who was in charge of administration at the jail.  (Brannon Depo. [67-7] at pp. 26-27.)

On August 1, 2014, Lott got into a verbal altercation with Brandy James, the girlfriend of fellow corrections officer Crystal Easterling, at a bar called Our Place Bar and Grill.  Neither James nor Easterling filed any complaint about Lott's behavior.  (James Depo. [67-19] at p. 11; Easterling Depo. [67-21] at p. 12.)  Bolton instructed Michael Reils ("Reils") to conduct an investigation on the matter, instructing him to speak with Estrada to receive the initial information about what he was to investigate.  (Reils Depo. [54-16] at pp. 4-5.)  Estrada told Reils that all employees at the bar had agreed to not let the chain-of-command know about the incident.  (*Id.* at pp. 14-16.)  Reils testified that Estrada was the sole source of his information and that she never disclosed to him who, if anyone, had complained about the incident at the bar in the first place.  (*Id.* at pp. 16, 27.)  Sheriff Billy McGee ("Sheriff McGee") made the final

decision to suspend Lott and everyone else at the bar pending the investigation results.  (McGee Depo. [67-3] at p. 13.)  Lott was notified of her suspension without pay on August 8, 2014.  (Lott Depo. [67-1] at pp. 20.)

On September 16, 2014, Lott was notified by mail that she was terminated from her employment.  (*Id.* at pp. 21.)  Sheriff McGee testified that this decision was made because her conduct at the bar was unbecoming of an officer.  (McGee Depo. [67-3] at pp. 14-15.)  Lott filed a second complaint with the EEOC after she was terminated.

## II.  DISCUSSION

### A.      Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted).  The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.*  "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)).  "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson*

*Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).  When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."  *Sierra Club, Inc.*, 627 F.3d at 138.  However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial."  *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted).  Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

### B.    Bolton and Estrada's Motion for Summary Judgment [54]

Lott has withdrawn all claims against Bolton and Estrada except for her claims under 42 U.S.C. § 1983 and her state law claim of malicious interference with employment.  The Court will examine both of these claims in turn.

### 1.    First Amendment Retaliation Claim under 42 U.S.C. § 1983

Bolton and Estrada contend that they are entitled to summary judgment under Lott's § 1983 claim based on qualified immunity because Lott's constitutional rights were not violated and because their conduct was objectively reasonable in light of clearly established legal rules. Their contention that they acted objectively reasonably is a conclusion they reach based on the fact that they believe that Lott's constitutional rights were not violated.  Therefore, to defeat summary judgment, Lott must show that a genuine dispute of fact exists as to whether her constitutional rights were violated.

4

Lott's claim under 42 U.S.C. § 1983 is a First Amendment retaliation claim.  Lott argues that Bolton and Estrada's retaliated against her in response to her testimony in the Ware-DuPree election contest.  For a First Amendment retaliation claim to go forward, Lott "must show:  (1) [she] suffered an adverse employment action; (2) the speech at issue involved matters of public concern; (3) [her] interest in the speech outweighs the government's interest in efficiency; and (4) the speech precipitated the adverse employment action."  *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004).

a.      **Adverse Employment Action**

Lott claims that the adverse employment actions she suffered were her transfer to Female 101, her suspension, and her termination.  Bolton and Estrada do not argue that her suspension and termination were not adverse employment actions, but do protest the label being applied to her transfer.  The Fifth Circuit has held that a transfer can be an adverse employment "if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement."  *Sharp v. City of Houston*, 164 F.3d 923, 934 (5th Cir. 1999).  A transfer will not be deemed an adverse employment action when there is no evidence that makes an "objective showing of a loss in compensation, duties, or benefits."  *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004).  There must be some offered evidence other than the plaintiff's "subjective beliefs."  *Jenkins v. Cit of San Antonio Fire Dep't*, 784 F.3d 263, 268 (5th Cir. 2015).

Lott argues that the new position in Female 101 was objectively less interesting than her position in the booking office.  In the booking position, Lott "did all the initial paperwork, booked the person in, dressed them out and got them ready to go back" as well as entering in the court paperwork into the computer upon release.  (Lott Depo. [69-1] at 90.)  In contrast, Lott

5

testified that in Female 101 "you basically just sit on a tower" and "watch cameras, make sure there's no activity, do head counts, feed, take to the nurse's station, [and] things of that nature." (*Id.* at 90-91.)  Her evidence that the position was objectively worse is more than just testimony of her subjective belief.  She points to specific duties which were taken away from her.  Though the difference in duties may not be as drastic and obvious as the lost duties in *Sharp*, where the plaintiff was transferred "from the elite Mounted Patrol to a teaching post at the Police Academy," construing all evidence in the light most favorable to Lott, a jury could find that the duties Lott lost were enough to make the position "objectively worse" than her previous position. 164 F.3d at 933*; see also Sierra Club, Inc.*, 627 F.3d at 138.  Therefore, they are not entitled to summary judgment based on this element of Lott's claim.

### b.        Matter of Public Concern

Bolton and Estrada dispute only that Lott's EEOC complaint was a matter of public concern.  Lott, however, argues that the speech that caused the retaliation was her testimony in the Ware-DuPree election contest.  Bolton and Estrada have put forth no argument that this was not a matter of public concern.  The Court assumes, then, that Bolton and Estrada have conceded that Lott's testimony was a matter of public concern for purposes of their motion for summary judgment.

### c.        Lott's Interest Outweighed Efficiency Interests

Bolton and Estrada have put forth no argument that any governmental efficiency interest outweighs Lott's interest in free speech on matters of public concern.  Because they have not identified any efficiency interests of the government that their actions served, the Court is unable to balance Lott's interest against the government's and will therefore assume Bolton and Estrada have conceded this element is met.

**d.      Speech Precipitated Adverse Employment Action**

Bolton and Estrada argue that Lott's transfer, suspension, and termination were not caused by her testimony in the Ware-DuPree contest.  Bolton and Estrada claim that Lott's transfer was to "keep the peace" after her EEOC complaint was filed, and that her suspension termination were in response to an altercation she was involved in at a bar and were decisions in which they took no part.  For First Amendment retaliation claims, "once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer retaliation was the real motive." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997).

Bolton and Estrada contend that, in so far as the transfer could be considered an adverse employment action, their actions could not have been said to cause it because the transfer was in response to Lott's EEOC complaint and was meant to "keep the peace" between her and Estrada. (Memo. in Support [55] at p. 12.)  Lott argues, though, that the EEOC complaint did not impact how she was treated by Estrada.  (Lott Depo. [69-1] at p. 86.)  Lott contends that Estrada began retaliating against her testimony in the Ware-DuPree trial immediately, and that this treatment was what prompted the eventual transfer to "keep the peace."  (*Id.* at p. 64, 85-87; *see also* Cooley Depo. [69-10] at p. 24.)  Additionally, Bolton and Estrada themselves appear to concede for the sake of their motion that Bolton played a part in the decision to transfer Lott to Female 101.  (Memo. in Support [55] at p. 12.)  Therefore, a reasonable jury could find that Bolton and Estrada both were the but-for cause of Lott's transfer.

Bolton and Estrada also argue that because neither of them were involved in the investigation or the final decision to suspend or terminate Lott, their actions cannot be said to have caused her suspension or termination.  However, Bolton and Estrada admit that Bolton was

the one who requested an investigation be conducted by Reils.  (Memo. in Support [55] at p. 12.)

Reils testified that Bolton instructed him to speak with Estrada to receive the initial information

about what he was to investigate.  (Reils Depo. [54-16] at pp. 4-5.)  Furthermore, Reils stated that

Estrada never disclosed to him who had complained about the incident at the bar in the first

place.  (*Id.* at p. 27.)  There seems to be enough evidence, then, for a reasonable jury to infer that

the investigation would not have occurred but-for the actions of Bolton and Estrada.  That the

actual suspension and termination decisions were made by Sheriff McGee, a party to this suit in

his official capacity, does not negate the fact that the decisions would not have been before him

but-for the investigation that was instigated by Bolton and Estrada.

Even if Bolton and Estrada's arguments were accepted as legitimate, nondiscriminatory

reasons explaining the adverse employment actions, Lott has met her burden in adducing some

evidence from which a reasonable jury could infer retaliation as the real motive.  It is undisputed

that Lott's testimony in the Ware-DuPree controversy implicated both Bolton and Estrada.  (Trial

Transcript [69-8].)  Both Lott and Cooley testified that she was treated differently immediately

after this testimony was given.  (Lott Depo. [69-1] at p. 64; Cooley Depo. [69-10] at p. 24.)

Cooley also claims that Estrada made threatening remarks that she was going to "get" Lott,

though she did not specifically name her.  (Cooley Depo. [69-10] at pp. 18-19.)  In her

deposition, Lott contends that she filed the EEOC complaint because of the on-going treatment

she had been receiving and the lack of response by those in the official chain-of-command when

she tried to bring it to their attention.  (Lott Depo. [69-1] at pp. 85-87.)  Cooley and Lott both

point out specific examples of Lott's mistreatment by Estrada in the months after her testimony

and leading up to her eventual termination.  (*See* Lott Depo. [69-1] at pp. 82-88, 119; Cooley

Depo. [69-10] at pp. 34-37, 39-42.)  Furthermore, Lott has put forward evidence showing that the

altercation in the bar occurred while she was off duty and involved only an exchange of words and gestures with the girlfriend of another sheriff department employee and did not involve any violence.  (James Depo. [69-19] at pp. 7-11; Easterling Depo. [69-21] at pp. 9-14.)  She has also put forth evidence of off-duty conduct by other sheriff department employees which produced neither suspension nor termination.  (McGee Depo [69-3] at pp. 17-21.)  This evidence, construed in a light most favorable to Lott as the nonmovant, is enough that a reasonable jury could infer that the adverse employment actions she suffered were in retaliation of her testimony in the Ware-DuPree election contest.  *See Sierra Club, Inc.*, 627 F.3d at 138.

Because Lott has presented evidence to support her contention that her testimony caused her transfer, suspension, and termination, this is a genuine factual dispute and summary judgment is not appropriate on this element of her claim.

Finally, Bolton and Estrada attempt to invoke res judicata in their rebuttal, arguing that because Lott failed to appeal her termination in the time departmental policy afforded her, her claim is barred.  Though this argument is not properly before the Court, as it was stated only in the defendants' rebuttal, even if it were, it would not be persuasive.  *See Gillaspy v. Dallas Indep. Sch. Dist.*, 278 F.App'x 307, 315 (5th Cir. 2008).  Res judicata is only a defense when there has been a final judgment on the merits "rendered by a court of competent jurisdiction."  *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir. 2000).  A failure to file an administrative appeal within the sheriff's department involves neither a court of competent jurisdiction nor a final judgment on the merits.  Therefore, res judicata does not apply.

Since Lott has produced evidence to support each element of her retaliation claim, the Court **denies** Bolton and Estrada's Motion for Summary Judgment [54] with respect to Lott's claim of First Amendment retaliation under 42 U.S.C. § 1983.

### 2.      Malicious Interference with Employment

Bolton and Estrada argue that Lott's state claim of malicious interference with employment must be dismissed against them because the claim is governed by the Mississippi Tort Claims Act (MTCA), which bars claims based on discretionary duties.  Section 11-46-9 of the MTCA states

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> . . .
>
> (d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or  employee thereof, whether or not the discretion be abused . . . .

Miss. Code Ann. § 11-46-9(1)(d).  If Lott were suing Bolton and Estrada because they recommended she be fired, an arguable discretionary function of their jobs as her supervisors, they may be correct that the MTCA precludes her claim.  However, while Lott may be claiming that her injury was her termination, among other things, she is not suing Bolton and Estrada for firing her.  The acts on which Lott bases her malicious interference with employment claim are the harassment and false reports that made her job more difficult and eventually culminated in her termination after the incident at the bar.  The allegedly false write-ups are covered by § 11-46-9, as disciplining employees would be a discretionary function of Bolton and Estrada's job functions as supervisors.  Even if they were false and an abuse of discretion, a claim could not be brought for these actions.  Miss. Code Ann. § 11-46-9(1)(d).  However, Lott alleges other actions, such as disrespectful comments and threats, refusing to address Lott directly, and telling other supervisors to stay away or make things up about her, that made her job more difficult and fell outside of Bolton and Estrada's official job duties.  As they make no argument that these

10

actions are not sufficient to support a malicious interference with employment claim, Bolton and Estrada will not be granted summary judgment on the theory that they were fulfilling the discretionary duties of their jobs.

Bolton and Estrada also contend that the MTCA bars employment claims altogether, citing *Blackston v. Epps* as support.  95 So.3d 667 (Miss. Ct. App. 2011).  *Blackston* states that "[a government] employee is not liable personally as long as their conduct falls within the course and scope of employment and does not otherwise constitute fraud, malice, libel, slander, defamation, or a crime."  *Id.* at 669 (citations omitted).  Bolton and Estrada make no argument in support of their motion that the actions Lott contends give rise to this claim were not malicious in nature, other than to state in a conclusory nature that Lott has only alleged this as a conclusion.  However, given the nature of the acts evidenced in the record, the Court finds that a reasonable jury could infer malice.  Therefore, Lott's claim of malicious interference with employment is not barred by the MTCA.

The Court does not decide whether Lott has adduced enough evidence to support each element of her claim for malicious interference with employment because Bolton and Estrada have put forward no arguments in their original motion that she has not.  The Court therefore **denies** Bolton and Estrada's Motion for Summary Judgment [54] as to this claim.

### C.    The County's Motion for Summary Judgment [56]

#### 1.    First Amendment Retaliation Claim under 42 U.S.C. § 1983

A First Amendment retaliation claim under 42 U.S.C. § 1983 requires a showing that "(1) [Lott] suffered an adverse employment action; (2) the speech at issue involved matters of public concern; (3) [her] interest in the speech outweighs the government's interest in efficiency; and (4)

the speech precipitated the adverse employment action." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004).

### a.      Adverse Employment Action

Lott argues that her transfer, suspension, and termination were all adverse employment actions. The County does not dispute that her suspension and termination were adverse employment actions, but contends that her transfer was not. The County's arguments are indistinguishable from those made by Bolton and Estrada in their motion. The only additional argument put forth by the County is the fact that Lott's title did not change with her transfer. The Court does not find this fact to be decisive. Therefore, for the reasons stated above, the Court finds that when all the evidence is construed in the light most favorable to Lott, a jury could find that the duties she lost were enough to make the position "objectively worse" than her previous position, making her transfer an adverse employment action. *See supra* Part B.1.a.

### b.      Matter of Public Concern

The Supreme Court has articulated a two-step inquiry to determine when a public employee's speech is protected by the First Amendment:  1) the speech must be made as a citizen and 2) it must be on a matter of public concern. *Lane v. Franks*, — U.S. —, 134 S. Ct. 2369, 2378, 189 L.Ed.2d 312 (2014) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S. Ct. 1951 (2006)). The Court in *Lane* held that "[t]ruthful testimony under oath by a public employee outside the scope of his ordinary job duties is speech as a citizen . . . even when the testimony relates to his public employment or concerns information learned during that employment." *Id.* The County does not dispute that Lott was speaking as a citizen when she testified at the Ware-DuPree trial. It does, however, contend that her testimony was not on a matter of public concern.

12

"Speech involves matters of public concern 'when it can be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Lane*, 134 S. Ct. at 2380 (quoting *Snyder v. Phelps*, 562 U.S. 443, 453, 131 S. Ct. 1207, 179 L.Ed.2d 172 (2011)). The County argues that Lott's testimony in the mayoral election contest does not relate to a matter of public concern because her testimony referred only to a phone call she overheard between Bolton and Estrada. Lott testified that Bolton called Estrada to get information about Samuel Lindsey, saying that "the son of a bitch was gonna pay." (Trial Transcript [67-8] at p. 5.) Lott also testified that this phone call was in response to Bolton and Estrada learning about Lindsey's testimony in the trial, which accused Bolton of releasing Lindsey from jail so that he could vote for DuPree in the election. (*Id.* at pp. 7-9.; *see also* Lott Depo. [67-1] at p. 61.) Lott's testimony, then, accused Bolton and Estrada of misusing their positions to retaliate against Lindsey, which the jury could find to be official misconduct. Official misconduct is "almost always" a matter of public concern. *Charles v. Grief*, 522 F.3d 508, 514 (5th Cir. 2008).

Even if Bolton's conduct was not official misconduct, Lott's testimony could still be found to be a matter of public concern. It is not disputed that Lott's testimony was admitted into evidence in the Ware-DuPree trial, which means that it was relevant to the election contest. *See* M.R.E. 402 ("Evidence which is not relevant is not admissible."). The County's argument amounts to an assertion that relevant testimony in an election contest is not a matter of public concern. Because an election contest relates to a political concern of the community, Lott's testimony in such a contest would as well, making it a matter of public concern. *See Lane*, 134 S. Ct. at 2380 (quoting *Snyder*, 562 U.S.at 453, 131 S. Ct. 1207). Therefore, the Court will not grant the County's motion on this element of Lott's § 1983 claim.

    **c.**  **Lott's Interest Outweighed Efficiency Interests**

To determine whether the County's efficiency interests outweigh Lott's free speech interest, the Court employs the *Pickering-Connick* balancing test.  *Jordan v. Ector Cnty.*, 516 F.3d 290, 295 (5th Cir. 2008).  This test requires the Court to "consider the balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public service it performs through its employees."  *Id.* at 299 (quoting *Connick v. Myers*, 461 U.S. 138, 142, 103 S. Ct. 1684, 75 L.Ed.2d 708 (1983)) (internal quotations omitted) (alteration in original).  A *Pickering-Connick* analysis requires the following factors to be considered:

> (1) the degree to which the employee's activity involved a matter of public concern; (2) the time, place, and manner of the employee's activity; (3) whether close working relationships are essential to fulfilling the employee's public responsibilities and the potential effect of the employee's activity on those relationships; (4) whether the employee's activity may be characterized as hostile, abusive, or insubordinate; (5) whether the activity impairs discipline by superiors or harmony among coworkers.

*Id.* (quoting *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 707 (5th Cir. 1998)).

The County argues that, because Lott's testimony was of such little importance and because it strained her relationship with her superiors, its efficiency interests outweigh her interest in giving the testimony.  The Court assumes the County is arguing under the first, third, and fifth factors of the *Pickering-Connick* balancing test and has conceded for the purposes of this motion that the time, place, and manner of her speech weighs in her favor, as well as the fact that her testimony was not hostile, abusive, or insubordinate.

The County claims that Lott's testimony was "of little to no import" to the Ware-DuPree trial.  The only evidence it offers, though, is the trial transcript of her testimony.  (County's Memo. in Support [57] at p. 15.)  The Court must assume, absent any contrary evidence, that Lott's testimony was admitted in the Ware-DuPree trial because it was relevant and therefore had

some level of import to the election contest.  *See* M.R.E. 402 ("Evidence which is not relevant is not admissible.").  With only the testimony itself offered, the Court cannot agree with the County that it was "of little or no import" to the election contest when it was admitted as relevant to the trial.

The County's remaining arguments that the negative effects of Lott's testimony on the essential close-working relationships in the jail and that her testimony impaired her superiors's ability to discipline her are no more than conclusory statements which point to no evidence in the record for support.  Therefore, because the *Pickering-Connick* balancing test weighs in Lott's favor, the Court will not grant the County's motion on this element of her claim.

### d.      Speech Precipitated Adverse Employment Action

The County argues that Lott's transfer, suspension, and termination were not caused by her testimony in the Ware-DuPree trial.  First, it argues that Captain Brannon was responsible for her transfer, and transferred her only to "keep the peace."  Second, it argues that her suspension and termination were caused by the incident at the bar and not by her testimony.

The County argues that Captain Brannon was the one who made the decision to transfer Lott "to keep the peace," a decision it contends was motivated solely to promote harmony in the administration of the jail.  Lott does not offer any evidence disputing that Captain Brannon made the decision to transfer her, nor has she offered any evidence that he was motivated to do so out of anything but a desire to facilitate the efficient administration of the jail.  (*See* Brannon Depo. [67-7] at pp. 26-27.)  Lott contends that "Estrada caused [her] to be transferred" but cites no evidence in the record in support of this contention.  (Memo. in Opposition [67] at p. 27.)  Absent any evidence establishing that the decision to transfer her was motivated by her testimony, the Court finds that the County's motion should be **granted** as to Lott's transfer.

15

The County makes the same arguments as Bolton and Estrada in support of its contention that Lott's suspension and termination were caused by the incident at the bar instead of Lott's testimony.  As stated above, there is evidence that Bolton and Estrada, two parties with motive to retaliate, had some level of involvement in the initiation of the investigation of the bar incidence. *See supra* Part B.1.d.  Sheriff McGee, the one who made the final decision to suspend and then terminate Lott, testified that, at the time of his deposition, he was still upset with Lott over her testimony in the Ware-DuPree contest.  (McGee Depo. [67-3] at pp. 10, 13-14.)  Furthermore, Lott has put forward evidence showing that the altercation in the bar occurred while she was off duty and involved only an exchange of words and gestures with the girlfriend of another sheriff department employee and did not involve any violence.  (James Depo. [69-19] at pp. 7-11; Easterling Depo. [69-21] at pp. 9-14.)  Lott has also put forth evidence of off-duty conduct by other sheriff department employees which produced neither suspension nor termination.  (McGee Depo [67-3] at pp. 17-21.)  This evidence, construed in a light most favorable to Lott as the nonmovant, is enough that a reasonable jury could infer that Lott's termination and suspension were in retaliation of her testimony in the Ware-DuPree election contest.  *See Sierra Club, Inc.*, 627 F.3d at 138.

### e.    *Monell* **Analysis**

The County argues that Lott's First Amendment retaliation claim fails because it was not the result of a custom, policy, or practice of Forrest County.  *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978).  The Fifth Circuit has held that, under *Monell*, "a single decision may create municipal liability *if* that decision were made by a final policymaker responsible for that activity."  *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996) (quoting *Brown v. Bryan Cnty., Okla.*, 67 F.3d 1174, 1183 (5th Cir. 1995)) (emphasis in

original).  The County has conceded that Sheriff McGee is a final policymaker.  (County Rebuttal [76] at p. 13.)  Because Sheriff McGee made the final decision on Lott's suspension and termination, Lott's claim does not fail under a *Monell* analysis.

Therefore, the Court will **grant in part** and **deny in part** the County's Motion for Summary Judgment [56] with respect to Lott's First Amendment retaliation claim under 42 U.S.C. § 1983.  It is **granted** as to Lott's claim that her transfer was motivated by retaliation on the part of the County.  It is **denied** as to her claim that her suspension and termination were motivated by retaliation on the part of the County.

### 2. Claims under 42 U.S.C. § 1981 and Title VII

Lott asserts claims for race discrimination, racial harassment, and retaliation against the County under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.  The tests for these claims under a summary judgment analysis are the same whether they are brought under Title VII or § 1981.  *Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 342 (5th Cir. 2002).

### a. Race Discrimination

The Fifth Circuit held in *Lee v. Kansas City S. R.R. Co.* that

[t]o establish a *prima facie* case of racial discrimination in employment, an employee must demonstrate that (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

574 F.3d 253, 259 (5th Cir. 2009).  The County argues that Lott has produced no evidence that similarly situated individuals of another race were treated more favorably than her.  Lott contends that she has met her burden here because she has pointed to the alleged sexual misconduct of

17

Sheriff McGee and Deputy Tim Eubanks, both of whom have been accused of adultery and did not face suspension or termination.  (*See* McGee Depo. [67-3] at pp. 15-20.)

Even assuming that adultery is comparable enough to the bar altercation for the two men to be "similarly situated" to Lott, Sheriff McGee, at least, is white and therefore not of another race.[1]  It is not enough under a claim of racial discrimination to prove that she was treated differently from other employees; Lott must prove she was treated differently *because of her race*.  To do so under Fifth Circuit precedent, Lott must adduce some evidence to show that she "was treated less favorably" because of her race than "other similarly situated employees," who were not of her race, "under nearly identical circumstances."  *Lee*, 574 F.3d at 259.  Because she has not produced such evidence, Lott's claim of racial discrimination under Title VII and § 1981 must fail.  Therefore, the Court **grants** the County's Motion for Summary Judgment [56] with respect to these claims.

### b.    Racial Harassment

Lott claims that she suffered a hostile work environment due to the racial harassment to which she was subjected.  To establish this claim, Lott "must prove:  (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action."  *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted).  Furthermore, "[f]or harassment on the basis of race to affect a term,

---

[1]The Court is unable to ascertain the race of Deputy Tim Eubanks from the record.  Lott, however, bears the burden of proving he is of a different race than her and has not met this burden.

condition, or privilege of employment, as required to support a hostile work environment under

Title VII, it must be sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment." *Id.* (internal quotations and citations

omitted). To determine whether harassment has risen to a level to create a hostile work

environment, the Court employs a totality-of-the-circumstances test, considering the following:

"the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating . . . and whether it unreasonably interferes with an employee's work performance."

*Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007) (quoting *Walker v.*

*Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)). A hostile work environment can be evidenced by

"[d]iscriminatory verbal intimidation, ridicule, and insults," but "simple teasing, offhand

comments, and isolated incidents" will not be enough. *Id.* (internal citations omitted). For a

plaintiff to recover, though, she must "personally experience most (if not all) of the conduct."

*Septimus v. Univ. of Houston*, 399 F.3d 601, 612 (5th Cir. 2005).

      Lott points to several comments by Bolton and Estrada as evidence that she was subjected

to racial harassment. First, she states that Estrada told her that "ain't no white going to beat no

black" for mayor of Hattiesburg. (Lott Depo. [67-1] at p. 74.) Lott claims that Estrada stated that

she was going to "whoop [her] white ass" and "go ghetto" on her. (*Id.* at p. 66.) Lott testified

further that Estrada indirectly threatened her by saying that "her baby's daddy was in prison and

that if anybody messed with her . . . they could come up missing." (*Id.*) When Lott asked if that

was directed at her, Estrada said, "Take it as you want it." (*Id.* at pp. 70-71.) Estrada also made

comments about a "white bitch" that Lott felt were directed at her. (*Id.* at p. 71.) Lott contends

that she heard from Cooley that Bolton stated that he "want[ed] that white bitch fired." (*Id.* at p.

80.)

Lott admits that most of these racially disparaging remarks were not made directly to her. (*Id.* at p. 66, 71, 79.)  In *Septimus*, the Fifth Circuit held that conduct complained about by other women was not an appropriate basis for the plaintiff's sexual harassment suit.  399 F.3d at 612. Though there were specific, isolated incidents that Septimus felt targeted her as a woman, such as a comment that she "was like a needy old girlfriend," the Fifth Circuit did not find that these incidents were enough to create a hostile work environment as they "were collectively insufficient to establish that [the defendant's] harassment was severe or pervasive enough to make her working environment objectively hostile or abusive."  *Id.*

Similarly, in this case, Lott's evidence is insufficient to establish a pervasively hostile work environment due to racial harassment.  Lott did not personally experience most of the conduct she points to as evidence of harassment.  Some of the conduct, such as the alleged threat by Estrada concerning her "baby's daddy" in prison, does not even directly implicate race.  The only comment about race that Lott testified was made directly to her was the comment that no white was going to beat a black for mayor.  (Lott Depo. [67-1] at p. 74.)  This one isolated incident is not enough to establish racial harassment pervasive enough to survive summary judgment.  The County's Motion for Summary Judgment [56] will therefore be **granted** with respect to Lott's claim of racial harassment under both Title VII and § 1981.

### c.    Retaliation

"Title VII prohibits retaliation against employees who engage in protected conduct, such as filing a complaint of discrimination."  *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002).  The analysis is the same for a claim under § 1983.  *See Patel*, 298 F.3d at 342. The Fifth Circuit has held that the burden-shifting structure set forth in *McDonnell Douglas Corp. v. Green* is applicable in cases such as this.  *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th

20

Cir. 1996).  The initial burden under *McDonnell* is on Lott to establish her *prima facie* case.  *Id.* at 304-05.  Once established, the burden shifts to the County to show a legitimate, non-discriminatory reason for its actions before shifting back to Lott to determine whether the real motivation was retaliation.  *Id.* at 305.  Therefore, the Court must first look at whether Lott has established her *prima facie* case.

To establish a retaliation claim, Lott must prove:  "(1) [s]he engaged in a protected activity; (2) [s]he suffered an adverse employment action; and (3) a causal nexus exists between the protected activity and the adverse employment action."  *Id.* (citing *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)).  There is no dispute that Lott's first EEOC complaint was protected conduct.  The County argues, though, that Lott cannot show that her transfer was an adverse employment action.  It further contends that no causal nexus exists between her EEOC complaint and her suspension and termination.

In her Memorandum in Opposition [67] to the County's motion, Lott produces the same evidence in support of her assertion that her transfer was an adverse employment action under he § 1983 claim as she cited in her Memorandum in Opposition [69] to Bolton and Estrada's motion.  (Memo. in Opposition [67] at pp. 21-22.)  Lott does not reassert this argument in the section of her memorandum dedicated to her retaliation claim, but the County had full notice of this argument and the opportunity to address it.  Therefore, the Court will not penalize Lott not repeating her argument for clarity's sake in this section.  The Court will again adopt its above reasoning and find that Lott has adduced enough evidence such that, when all evidence is viewed in her favor and all reasonable inferences drawn, a jury could believe that her new position was objectively worse than her previous one and find it to be an adverse employment action.  *See supra* B.1.a.  Furthermore, because the County does not dispute that there was a causal

connection between the EEOC complaint, the protected action taken by Lott, and her transfer, it will not be granted summary judgment on this claim as to the transfer.

The County does, however, argue that there is no causal nexus between Lott's EEOC complaint and her suspension and termination. In support of such a causal nexus, Lott contends that she was an excellent employee and that her termination went against typical policies of the County. She further argues that the close temporal proximity between the adverse employment actions and the EEOC complaint allow an inference of a causal connection. Lott's contentions that she was an excellent employee and that her termination went against typical policies are misplaced. While this evidence might be useful to rebut a proffered legitimate reason for her termination, it does not establish a causal nexus needed for her *prima facie* case. Even assuming *arguendo* that a close temporal relationship alone would be enough to establish a causal link, Lott filed her first EEOC complaint on October 23, 2013. (First EEOC Complaint [67-14].) She was suspended on August 8, 2014, and terminated on September 16, 2014. (Lott Depo. [67-1] at pp. 20-21.) The Court does not find that these dates are close enough in time to permit a reasonable jury to infer causation. The County's request for summary judgment will therefore be **granted** under this claim with respect to Lott's suspension and termination.

Therefore, the Court will **grant in part** and **deny in part** the County's Motion for Summary Judgment [56] as it pertains to Lott's Title VII and § 1981 retaliation claim. It will be **granted** as to the claim that Lott's suspension and termination were caused by her EEOC complaint. It will be **denied** as to the claim that her transfer was in retaliation for her EEOC complaint.

### 3. Wrongful Discharge

Lott's wrongful discharge claim, as a state law claim against a political subdivision, is subject to the MTCA.  *See Estate of Williams ex rel. Williams v. City of Jackson*, 844 So.2d 1161, 1164 (Miss. 2003).  Section 11-6-11 of the MTCA holds that "[a]fter all procedures within a governmental entity have been exhausted, any person having a claim under this chapter shall proceed as he might in any action . . . , except that . . . the person must file a notice of claim with the chief executive officer of the governmental entity."  The Mississippi Supreme Court has held that this section requires both that internal grievance processes be followed and a notice of claim be filed.  *Harris v. Miss. Valley State Univ.*, 873 So.2d 970, 989-90 (Miss. 2004).  The Forrest County Sheriff's Department provides for an employee to appeal her termination within ten days of the termination decision.  (*See* Memo [56-24].)  As Lott does not dispute that she did not follow this internal appeals process after her termination, she is barred by the MTCA from bringing her state law claim of wrongful discharge.  The County's Motion for Summary Judgment [56] will therefore be **granted** as to this claim.

### III.  CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Bolton and Estrada's Motion for Summary Judgment [54] is **denied**.

IT IS FURTHER ORDERED AND ADJUDGED that the County's Motion for Summary Judgment [56] is **granted in part** and **denied in part**.

It is **granted** as to the following claims:  First Amendment retaliation under 42 U.S.C. § 1983 with respect to Lott's transfer; race discrimination under 42 U.S.C. § 1981 and Title VII; racial harassment under 42 U.S.C. § 1981 and Title VII; retaliation under 42 U.S.C. § 1981 and Title VII with respect to Lott's suspension and termination; and wrongful discharge.

It is **denied** as to the following claims, which remain pending:  First Amendment retaliation under 42 U.S.C. § 1983 with respect to Lott's suspension and termination, and retaliation under 42 U.S.C. § 1981 and Title VII with respect to Lott's transfer.

SO ORDERED AND ADJUDGED this the 10th day of November, 2015.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE

24